UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHAD TRACY VEGA,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,[1]

Defendant.

No. CV-11-0310-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment noted for hearing without oral argument. (ECF No. 13, 16). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Jeffrey R. McClain represents the Commissioner of Social Security (defendant). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October

[1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

6, 2008, alleging disability as of July 17, 2005 (Tr. 136-142). The applications were denied initially and on reconsideration. Administrative Law Judge (ALJ) James W. Sherry held a hearing on June 10, 2010 (Tr. 38-75). The ALJ issued an unfavorable decision on July 21, 2010 (Tr. 14-27). The Appeals Council denied review on July 27, 2011 (Tr. 1-6). The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 22, 2011. (ECF No. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on October 31, 1975, and was 29 years old at the time of the alleged onset date (Tr. 43). At the administrative hearing, plaintiff testified he was single, had three minor children, and lived in a home with his grandparents (Tr. 44). He did not live with his children but had weekend visitations with his twin four-year-olds (Tr. 45). Plaintiff had obtained his GED, and his sole source of income at the time was public assistance (Tr. 45-46).

Plaintiff alleges he stopped working in 2005 due to an on-the-job injury (Tr. 47). Plaintiff testified he tripped and fell out of his parcel delivery truck, landed on his head, and compressed his spine and neck (Tr. 47, 52). He underwent surgery on his neck as a result of the injury (Tr. 53). Plaintiff stated that prior to the neck injury, he also had two surgeries on his right knee and one surgery on his left knee (Tr. 51). He

indicated his knees have done well since the surgeries but that he must still take it easy on them and use ice if he overdoes it (Tr. 51). He stated he continues to have daily neck spasms, has headaches three or four times a week, and is limited in his range of motion with his neck (Tr. 53-54, 57). He further stated he has daily lower back pain which causes problems with his sleep (Tr. 54, 57). Plaintiff also testified he experienced daily anxiety and panic attacks and was taking medications for depression and anxiety (Tr. 58-59).

Plaintiff testified he could sit for 25 to 30 minutes at a time, stand 25 to 30 minutes at a time, walk about a block before having to take a break, and lift and carry about 15 pounds, but nothing above the shoulders (Tr. 54-56). He stated it was uncomfortable to bend over and pick something off the floor, and although he was able to climb stairs, he would go very slow and it caused pain. (Tr. 55-56). With regard to housework and chores, plaintiff indicated he did very little (Tr. 59). He could help vacuum on a good day, fold some clothes, and do a little bit of cooking (Tr. 59-60). He usually spends his days watching television, going to appointments and assisting his fiancé with errands (Tr. 60). Plaintiff testified he would go fishing for recreation on good days, but he stated he has three to four bad days a week, and, on those occasions, he is not able to do much of anything (Tr. 60, 62-65).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the “inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P

App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

///

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.

*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ determined, at step one, that plaintiff has not engaged in substantial gainful activity since July 17, 2005, the alleged onset date (Tr. 16). At step two, the ALJ found plaintiff had severe impairments of "cervical degenerative disc disease, lumbar degenerative disc disease, and right knee disorder, status post cartilage surgery" (Tr. 16). The ALJ specifically concluded plaintiff suffered no severe impairment with respect to his left knee and mental health (Tr. 19-23).

At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 23). The ALJ assessed plaintiff's RFC during the relevant time period and determined that plaintiff could perform light work except that he should never climb ladders, ropes or scaffolds; he could only occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl; and

should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. At step four, the ALJ found that plaintiff could perform his past relevant work as a teacher, vocational training (Tr. 27). The ALJ thus determined that plaintiff has not been under a disability within the meaning of the Social Security Act at any time from July 17, 2005, through the date of his decision (Tr. 27).

## ISSUES

Plaintiff argues the ALJ erred at step two of the sequential evaluation process with respect to his mental impairments. Plaintiff asserts he has provided ample evidence proving the existence of a severe psychological impairment. Plaintiff additionally contends he is more limited from a physical standpoint than what was determined by the ALJ. (ECF No. 14 at 11-18).

## DISCUSSION

### I. Severe Impairment

Plaintiff asserts the ALJ erred by concluding he does not have a severe mental impairment at step two of the sequential evaluation process. With respect to this issue, plaintiff argues the ALJ erroneously rejected the opinions of Brooke Sjostrom, MS, LMHC, and Mahlon Dalley, Ph.D., in favor of the opinions of the state agency reviewing physician (ECF No. 14 at 12-16).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839

(9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

   In this case, while the ALJ accorded significant weight to the state agency reviewing psychological consultant (Tr. 20), substantial evidence in addition to the state agency report justifies the ALJ's rejection of the reports of Dr. Dalley and Ms. Sjostrom.

   On August 15, 2008, Ms. Sjostrom, under the supervision of Dr. Dalley, completed a psychological evaluation of plaintiff (Tr. 458-468).  It was reported that plaintiff had a history of marijuana, methamphetamine and cocaine abuse while hanging out with members of the Hells Angels motorcycle club, but that he was

able to quit using drugs on his own and had been abstinent for years (Tr. 459). Plaintiff was diagnosed with undifferentiated somatoform disorder and adjustment disorder with mixed anxiety and depressed mood and given a global assessment of functioning ("GAF") score of 55[2]. Despite a GAF score indicative of only moderate symptoms, it was opined that plaintiff had marked limitations with his ability to relate appropriately to co-workers and supervisors and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 465). As noted by the ALJ, the marked limitations are conclusory and unsupported by objective medical findings (Tr. 19).

On February 21, 2009, Nathan Henry, Psy.D., completed a psychological evaluation of plaintiff (Tr. 551-556). Plaintiff reported to Dr. Henry that he drank heavily for a period of six months following his accident, had been a long-time user of cannabis, last using about three months prior to the evaluation, and used methamphetamine for a one-year period at age 21 (Tr. 553). Plaintiff indicated he spends his days catching up on chores, cooking and watching his fiancé's children (ages 7, 4 and 3) while she is at work (Tr. 554). He stated he has two or three close friends, interacted socially mostly with family, does not have a history of problems making and maintaining friendships, and is able to relate fairly well with others (Tr. 554-555). Dr. Henry diagnosed major depressive disorder, recurrent, in partial remission, alcohol abuse, and cannabis abuse and assessed a GAF

---

[2]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

score of 60 (Tr. 554-555). Dr. Henry indicated that plaintiff had responded fairly well to prescribed medication and although his depressive and anxiety symptoms would likely make it more difficult for him to obtain and sustain gainful employment, the symptoms did not appear to be of the nature or severity as to prevent him from working (Tr. 555). The ALJ gave "great weight" to Dr. Henry's opinion that plaintiff's mental impairments did not significantly limit his ability to perform work activities, as it was based upon history and evaluation and was consistent with the other objective evidence of record (Tr. 20).

On March 23, 2009, a state agency reviewing psychological consultant, Edward Beatty, Ph.D., opined that plaintiff's mental impairments were nonsevere, noting that he had no restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 557-570). The ALJ afforded Dr. Beatty's opinions significant weight because they were well supported by the medical evidence (Tr. 20-21).

On November 18, 2009, Dr. Dalley completed a second psychological evaluation of plaintiff (Tr. 616-624). Dr. Dalley diagnosed plaintiff with major depressive disorder, recurrent, severe, without psychotic features; pain disorder associated with both psychological factors and a general medical condition; and personality disorder, NOS, with dependent features (Tr. 618). Dr. Dalley concluded that plaintiff had four marked limitations in the social category on the form (Tr. 619). He specifically opined plaintiff would have marked limitations with regard to his ability

to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting and maintain appropriate behavior in a work setting (Tr. 619).

As noted by the ALJ, Dr. Dalley's assessed limitations in social functioning were unsupported by objective record evidence (Tr. 21). The finding of marked limitations in social factors is contrary to plaintiff's report to Dr. Henry that he has two or three close friends, interacts socially with family, does not have a history of problems making and maintaining friendships, and is able to relate fairly well with others (Tr. 554-555). The ALJ properly found Dr. Dalley's opinions with regard to plaintiff's social functioning were entitled to little weight (Tr. 21).

In this case, the ALJ provided specific, legitimate reasons for rejecting the opinions of Dr. Dally and Ms. Sjostrom and for according weight to the opinions of Dr. Henry and Dr. Beatty with respect to plaintiff's mental functioning. Those reasons are supported by substantial record evidence.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to

second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Accordingly, the ALJ did not err by rejecting the opinions of Dr. Dally and Ms. Sjostrom and for according weight to the opinions of Dr. Henry and Dr. Beatty.

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see, Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

The undersigned finds that the ALJ's determination that plaintiff's medically determinable mental impairments do not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities (Tr. 21) is supported by substantial

evidence and free of legal error. Accordingly, the credible evidence of record does not establish that plaintiff has a severe mental impariment. The ALJ did not err at step two of the sequential evaluation process.

**II. Physical Limitations**

Plaintiff also indicates he believes the ALJ erred by finding he has the RFC to perform a range of light exertion level work activity. (ECF No. 14 at 16-18). Plaintiff contends that the opinions of Duncan Lahtinen, D.O., reflect that he has greater restrictions from a physical standpoint than those assessed by the ALJ. He argues that the ALJ failed to set forth the requisite specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Lahtinen's opinions.

As noted above, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor, *Magallanes*, 881 F.2d at 751-55, but the ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.

The ALJ's decision discussed in great detail the record evidence related to plaintiff's physical limitations (Tr. 17-19, 25-27). As noted by the ALJ, Dr. Lahtinen's assessments are inconsistent with the objective evidence of record, which show minimal findings on imaging studies and benign physical and neurological examinations (Tr. 26).

///

On June 30, 2006, at a postoperative visit, William E. Bronson, M.D., noted that while plaintiff continued to struggle somewhat with pain, he stated he was much better than he was preoperatively (Tr. 294). Plaintiff informed Dr. Bronson at that time that he had been using a motorcycle with a camera on it and doing speeds in excess of 100 mph (Tr. 294).

A September 8, 2006, lumbar spine MRI revealed "[m]ild disc height loss and dehydration at the L4-5 level with a mild diffuse posterior disc bulge and a right paracentral protrusion. This produces mild central stenosis with moderate narrowing at the right lateral recess. The right neural foramen is also mildly stenotic" (Tr. 419).

On October 6, 2006, plaintiff returned to Dr. Bronson with complaints of continued low back pain (Tr. 292-293). Dr. Bronson noted the exam was relatively benign (Tr. 292). Dr. Bronson recommended physical therapy (Tr. 293). Plaintiff followed up with Dr. Bronson on November 22, 2006 (Tr. 290-291). It was noted at that time that the examination was benign, plaintiff had normal strength in all groups, and plaintiff had no troubles sitting, standing, or moving about the room (Tr. 290). On January 12, 2007, Dr. Bronson indicated plaintiff was generally doing better, the core muscle strengthening had helped immensely and plaintiff had much less pain (Tr. 289).

July 19, 2007 lumbar spine x-rays revealed very minimal disk space narrowing at more than one level and no acute bone pathology (Tr. 393). October 31, 2007 lumbar spine x-rays showed no significant change from the examination of July 19, 2007 (Tr. 386).

September 12, 2008, cervical spine x-rays showed mild vertebral spondylosis at C4 on 5, C5 on 6, C6 on 7 and slight interval compression at C6 on 7; lumbar spine x-rays showed mild vertebral spondylosis L4-5 and minimal vertebral spondylosis L3-L4, x-rays of the right knee revealed compatible findings with previous medial collateral ligament injury but otherwise unremarkable right knee x-ray; and left knee x-rays revealed no significant findings (Tr. 478).

On September 15, 2008, plaintiff was seen by George W. Bagby, M.D., for a consultative evaluation (475-479). It was noted that plaintiff was in no acute distress on examination (Tr. 476). Dr. Bagby diagnosed postoperative cervical spine decompression C6 on 7 with subjective neural complaints of the right upper extremity and possible neural encroachment at C7 on T1 level, mild degenerative changes of the lumbar spine, right knee postoperative times two with normal expected result, and left knee surgery again of surgical removal of cartilage with normal expected results (Tr. 478). September 25, 2008, lumbar and cervical spine MRIs showed the overall appearance had not substantially changed since the prior studies in November 2005 (Tr. 480). Dr. Bagby opined that the images were consistent with his prior conclusions of marked impairment with the ability to perform light work (Tr. 480).

On April 9, 2009, state agency reviewing physician Cheri Glore also opined that plaintiff could perform light work with additional postural and environmental limitations (Tr. 571-578).

On January 14, 2009, Craig M. Bone, M.D., examined plaintiff with respect to right knee complaints (Tr. 548-550). X-rays showed no significant abnormalities and an MRI showed evidence of

a medial collateral ligament sprain. Dr. Bone diagnosed right knee strain and recommended physical therapy (Tr. 549).

On August 13, 2008, Dr. Lahtinen filled out a DSHS Physical Evaluation form which included no narrative or explanation of the bases for the conclusions made on the form[3] (Tr. 453-456). Dr. Lahtinen opined that plaintiff's cervical and lumbar derangement caused him to be severely limited, which is defined on the form as unable to lift at least 2 pounds or unable to stand and/or walk (Tr. 455). However, Dr. Lahtinen estimated plaintiff's limitations would continue for six months[4] (Tr. 456). On March 9, 2010, Dr. Lahtinen also provided a short letter which stated that plaintiff "would be considered unemployable" due to issues with his neck, back and depression (Tr. 643).

Dr. Lahtinen's August 13, 2008 assessment is inconsistent with plaintiff's testimony regarding his limitations. Plaintiff testified he could sit for 25 to 30 minutes at a time, stand 25 to 30 minutes at a time, walk about a block before having to take a break, and lift and carry about 15 pounds (Tr. 54-56). Moreover, the medical evidence outlined above, and thoroughly discussed by the ALJ, supports the ALJ's determination that plaintiff retained the physical RFC to perform a limited range of light exertion level work. *See supra*. It does not support a finding that

---

[3]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding an ALJ's rejection of a check-off report that did not contain an explanation for the conclusions made was permissible).

[4]The assessed limitations of Dr. Lahtinen would thus not meet the duration requirements of the Act (one year). 42 U.S.C. § 1382c(a)(3)(A).

plaintiff could only lift 2 pounds or would be unable to stand and/or walk.

Dr. Lahtinen's opinion in the March 2010 letter that plaintiff is "unemployable" is unsupported by objective medical findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit a treating physician's opinion that is unsupported by rationale or treatment notes and offers no objective medical findings to support the existence of alleged conditions). Furthermore, it is the role of the ALJ to determine whether a claimant is disabled within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund*, 253 F.3d at 1156.

Based on the foregoing, the undersigned finds that the reasons given by the ALJ for rejecting Dr. Lahtinen's assessments were specific and legitimate and supported by substantial record evidence. The undersigned finds that the ALJ's physical RFC determination is in accord with the weight of the record evidence and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 16**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

///

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this 4th day of March, 2013.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT’S MOTION FOR SUMMARY JUDGMENT - 19